IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| FREDDIE J. WELLS , | ) | Civil Action No.  4:06-cv-01965-HMH-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| SOUTH CAROLINA DEPARTMENT OF | ) | |
| PROBATION PAROLE AND PARDON, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

The *pro se* petitioner filed a petition for writ of habeas corpus on  July 7, 2006. Respondent filed a Motion for Summary Judgment on August 17, 2006.[1] The undersigned issued an order filed August 21, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the Motion for Summary Judgment procedure and the possible consequences if he failed to respond adequately. Petitioner failed to file a response to the Motion for Summary Judgment. On October 3, 2006, the undersigned issued another Order instructing the petitioner to respond to the respondent's Motion for Summary Judgment within ten (10) days of the date of the Order and advising petitioner if he did not respond, his case may be dismissed pursuant to Federal Rules of Civil Procedure 41(b), which would be considered an adjudication on the merits, i.e., with prejudice. Petitioner failed to file a response. Therefore, the undersigned issued a report and recommendation recommending that the case be dismissed pursuant to Rule 41b. Petitioner filed objections to the

---

[1]This habeas corpus case was automatically referred to the undersigned United States magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.02 (B)(2)(c), DSC.  Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

report and recommendation stating he wished to pursue his case. Thus, the district judge remanded the case to the undersigned and gave petitioner fifteen (15) days to file a response to the respondent's motion for summary judgment.

Petitioner filed a response in opposition to respondent's motion for summary judgment on November 21, 2006. Respondent filed a reply to the response on November 30, 2006. Petitioner filed a second reply on December 14, 2006.

On December 21, 2006, petitioner filed a document entitled "Motion to invade a Writ of Mandamus in Protecting and enforcing the ex-post-facto law in the case." (Document #17). Respondent filed a response in opposition.

### I. PROCEDURAL HISTORY

On June 2, 2001, petitioner was arrested in Florence County, South Carolina for Felony Driving Under the Influence (Felony DUI). Petitioner was subsequently indicted at the January 2002, term of the grand jury of Florence County for felony DUI causing death. On October 25, 2002, petitioner pleaded guilty as charged and was sentenced by the Honorable James Brogdon to five (5) years imprisonment. Petitioner did not appeal his conviction or sentence.

On June 30, 2006, after serving the required "eighty-five percent of the actual term of imprisonment imposed" S.C. Code Ann. § 24-13-150(A), Appellant was released, pursuant to Section S.C. Ann. §24-21-560, to the South Carolina Department of Probation, Parole and Pardon Services (Department), under its statutorily mandated Community Supervision Program (CSP) with an end date of June 29, 2008.

## II. PETITIONER'S GROUNDS FOR RELIEF

On July 7, 2006, the petitioner filed the instant action. In his petition for habeas corpus, petitioner raises the following allegations, quoted verbatim:

Ground One:            False imprisonment

Supporting Facts:    In Exhibit 1, my commitment is to 5 yr mandatory sentence non-violent, serious with no stipulation other than what is recommended by Judge Brogdon on 2002-Oct. 25 and I finish the 5 yr sentence on 30 June 2006. The Dept. Of Correction put me under 2 yrs supervision with the South Carolina Dept. Of Probation, Parole and Pardon for 2 years with home detention which it violates the ex post facto laws which protects against any laws that aquate a sentence.

Ground Two:            Cruel and Unusual Punishment.

Supporting Facts:    The commitment in the original sentence has been completed and now the State has add a new sentence with a conditional sentence of 2 yrs supervised community program in exhibit II and III. Which is unlawful and violates the ex post facto laws which plainly protect against and additional laws passed that is impose and aquates a defendant original sentence and this plainly does and relief is requested immediately.

(Petition.).

## III. SUMMARY JUDGMENT

On August 17, 2006, the respondent filed a motion for summary judgment. In the supporting memorandum, the respondent contends that it is entitled to summary judgment because of the following:

    1.    Petitioner has failed to exhaust available state court remedies.

>    2.    Petitioner has failed to state a claim of which relief can be granted under either ground advanced in his petition.

(Memorandum).

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material

fact." In the Celotex case, the defendants are "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## IV.  STANDARD OF REVIEW

Under established local procedure in this judicial district, a careful review has been made of the *pro se* petition pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and other habeas corpus statutes. The review has been conducted in light of the following precedents: Denton v. Hernandez, 504 U.S. 25, 60 U.S.L.W. 4346, 118 L.Ed.2d 340, 112 S.Ct. 1728, 1992 U.S. LEXIS® 2689 (1992); Neitzke v. Williams, 490 U.S. 319, 324-325, 1989 U.S. LEXIS® 2231 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 1995 U.S.App. LEXIS® 26108 (4th Cir. 1995)(*en banc*), *cert. denied*, 516 U.S. 1177, 134 L.Ed.2d 219, 116 S.Ct. 1273, 1996 U.S. LEXIS® 1844 (1996); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); and Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979). This court is required to construe *pro se* complaints and petitions liberally. Such *pro se* complaints and petitions are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, Leeke v. Gordon, 439 U.S. 970 (1978), and a federal district court is charged with liberally construing a complaint or petition filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See* Hughes v. Rowe, 449 U.S. 5, 9 (1980); and Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. Fine v. City of New York, 529 F.2d 70, 74 (2nd Cir. 1975). Even under this less

5

stringent standard, the § 2241 petition — which raises claims cognizable only under 28 U.S.C. § 2255 — should be adjudicated by the sentencing court. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in this federal district court. Weller v. Department of Social Services, 901 F.2d 387, 1990 U.S.App. LEXIS® 6120 (4th Cir. 1990).

Prior to enactment of 28 U.S.C. § 2255, the only way a federal prisoner could collaterally attack a federal conviction was through petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See* Triestman v. United States, 124 F.3d 361, 373 (2nd Cir. 1997). In 1948, Congress enacted § 2255 primarily to serve as a more efficient and convenient substitute for the traditional habeas corpus remedy. In doing so, Congress did not completely foreclose the use of § 2241 as a remedy for federal prisoners. Section 2241 remains an option whenever a § 2255 motion is "inadequate or ineffective" to test the legality of a prisoner's detention. *See* In re Dorsainvil, 119 F.3d 245, 249 (3rd Cir. 1997). Since the passage of § 2255, § 2241 has only been resorted to only in limited situations such as actions challenging the administration of parole, Doganiere v. United States, 914 F.2d 165, 169-170 (9th Cir. 1990), *cert. denied*, 499 U.S. 940 (1991); computation of good time or jail time credits, McClain v. United States Bureau of Prisons, 9 F.3d 503, 504-05 (6th Cir. 1993); prison disciplinary actions, United States v. Harris, 12 F.3d 735, 736 (7th Cir. 1994); or imprisonment allegedly beyond the expiration of a sentence, Atehortua v. Kindt, 951 F.2d 126, 129-130 (7th Cir. 1991).

"[A] prisoner who challenges his federal conviction or sentence cannot use the federal habeas corpus statute at all but instead must proceed under 28 U.S.C. § 2255." Waletzki v. Keohane, 13 F.3d 1079, 1080 (7th Cir.1994). A petition for habeas corpus under § 2241, in contrast, is the

remedy to challenge federal confinement that is not pursuant to a sentence of a federal court, or the unlawful execution of a valid sentence, confinement beyond its term. Atehortua v. Kindt, supra, 951 F.2d at 129-130.

## V.  DISCUSSION

Respondent argues it is entitled to summary judgment in that petitioner has failed to exhaust his state court remedies. Respondent argues as follows:

> To the extent he believes the entire CSP program and the statutes that established that program are unconstitutional, he can choose to ignore his conditions or supervision, and then raise his claims at the inevitable violation hearing brought before the South Carolina Court of General Sessions. Alternatively, petitioner could file a Declaratory Judgment action in the Court of Common Pleas seeking a ruling on the construction and constitutionality of the statute that requires him to participate in the CSP. Finally, petitioner could attempt to submit any constitutional challenges to the CSP in the original jurisdiction of the South Carolina Supreme Court. Therefore, respondent submits that petitioner has adequate and available State remedies which must be exhausted before he can pursue federal habeas corpus.

(Respondent's brief p. 3-4).

The undersigned finds petitioner has failed to exhaust his state court remedies before filing this petition.  Therefore, it is recommended that the petition be dismissed for failure to exhaust his state court remedies.

Additionally, it appears this is a challenge to state law based on a state statute. Generally, claims arising from state law are not cognizable. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Ramdass v. Angelone, 187 F.3d 396, 407-408 (4th Cir. 1999). A claim that state law was violated "may not be reached unless the alleged error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice,' or [there are] 'exceptional circumstances where the need

7

for the remedy afforded by the writ of habeas corpus is apparent.'" In this case, petitioner is challenging a state statute that mandates the Community Supervision Program. S.C. Code Ann. § 24-21-560 (Supp. 2005). Therefore, this action is not cognizable.

In the alternative, the undersigned will briefly discuss the merits of the case.

Respondent argues petitioner has failed to state a claim for which relief can be granted under either ground asserted by petitioner in his petition. Respondent argues as follows:

> On January 1, 1996, South Carolina's "no parole offense" classification system went into effect. S.C. Code Ann. § 24-13-100 to -175 (Supp. 2005). As part of the same legislation, Section 24-21-560 of the South Carolina Code created the CSP to be operated by the Department. It provides that:
>
>> Notwithstanding any other provision of law, except in a case in which the death penalty or a term of life imprisonment is imposed, any sentence for a "no parole offense" as defined in Section 24-13-100 must include any term of incarceration and completion of a community supervision program operated by the Department of Probation, Parole and Pardon Services.
>
> S.C. Code Ann. § 24-21-560(A) (Supp. 2005) (emphasis added). The CSP may last no more than two continuous years and the terms and conditions of the CSP are in the discretion of the Department based upon guidelines developed by the Director. S.C. Code Ann. § 24-21-560(B) (Supp.2005). The terms and conditions of Petitioner's CSP are described on the program certificate (Respondent's exhibit #2) and are nearly identical to the Department's standard condition of probation and parole. If a court determined that a prisoner has wilfully violated a term or condition of CSP it may revoke the prisoner's CSP and impose a sentence of up to one year for the violation. S.C. Code Ann. 24-21-560(c) (Supp. 2005).

(Respondent's memorandum).

Based on the evidence submitted, petitioner was convicted of Felony DUI causing death for an event that occurred on June 2, 2001. See S.C. Code § 56-5-2945(A)(2) (Supp. 2001). At the time petitioner committed Felony DUI causing death, it was classified as a "B-felony" and that

classification has remained unchanged ever since. S.C. Code Ann. § 16-1-90(B)(Supp. 2001, 2003, & Supp.2005). Thus, petitioner's offense was a "no parole offense" on the date it was committed, and the mandatory CSP was a part of petitioner's sentence for that "no parole offense." Again, this involves state statutes which are not cognizable.

Petitioner also alleges cruel and unusual punishment and false imprisonment. Petitioner alleges he has now been arrested for a CSP violation and is being held with no bond and that such actions, and the CSP program, constitute cruel and unusual punishment. Additionally, he alleges that false imprisonment because he was required to participate in the CSP and/or his arrest for violating the terms of the CSP constitute false imprisonment.

Respondent asserts that petitioner is being detained at the Florence County Detention Center but is being held without bond only because bond was denied by the Florence County Magistrate who conducted the bond hearing following petitioner's third arrest. Further, respondent responded that petitioner was currently scheduled for a CSP violation hearing on all outstanding violation charges during the week of December 11, 2006.

On January 1, 1996, South Carolina's "no parole offense" classification system went into effect and South Carolina Code § 24-21-560 created the CSP to be operated by the Department. This Section reads as follows:

> 24-21-560.   Community supervision program; eligibility; time periods, supervision, and determination of completion; violations; revocation; notification of release to community supervision.
>
> (A)   Notwithstanding any other provision of law, except in a case in which the death penalty or a term of life imprisonment is imposed, any sentence for a "no parole offense" as defined in Section 24-13-100 must include any term of incarceration and completion of a community supervision program operated by the Department of

>Probation, Parole, and Pardon Services. No prisoner who is serving a sentence for a "no parole offense" is eligible to participate in a community supervision program until he has served the minimum period of incarceration as set forth in **Section 24-13-150**. Nothing in this section may be construed to allow a prisoner convicted of murder or a prisoner prohibited from early release, discharge, or work release by any other provision of law to be eligible for early release, discharge, or work release.
>
>(B) A community supervision program operated by the Department of Probation, Parole, and Pardon Services must last no more than two continuous years. The period of time a prisoner is required to participate in a community supervision program and the individual terms and conditions of a prisoner's participation shall be at the discretion of the department based upon guidelines developed by the director. A prisoner participating in a community supervision must be supervised by a probation agent of the department. The department must determine when a prisoner completes a community supervision program, violates a term of community supervision, fails to participate in a program satisfactorily, or whether a prisoner should appear before the court for revocation of the community supervision program. . . .

As previously noted, petitioner pleaded guilty to Felony DUI on October 25, 2002. The event occurred on June 2, 2001, and was classified as a "B-Felony" meaning it was a "no parole offense." Therefore, under South Carolina Statute, petitioner's term had to include any term of incarceration *and* completion of a community supervision program operated by the Department of Probation, Parole and Pardon Services. If a court determines that a prisoner has wilfully violated a term or condition of CSP, it may revoke the prisoner's CSP and impose a sentence of up to one year for the violation. S.C. Code Ann. § 24-21-560(C) and §24-21-560(D) reads as follows:

>(C)   If the department determines that a prisoner has violated a term of the community supervision program and the community supervision should be revoked, a probation agent must initiate a proceeding in General Sessions Court. The proceeding must be initiated pursuant to a warrant or a citation issued by a probation agent setting forth the violations of the community

>supervision program. The court shall determine whether:

(1) the terms of the community supervision program are fair and reasonable;
(2) the prisoner has complied with the terms of the community supervision program;
(3) the prisoner should continue in the community supervision program under the current terms;
(4) the prisoner should continue in the community supervision program under other terms and conditions as the court considers appropriate;
(5) the prisoner has wilfully violated a term of the community supervision program.

>If the court determines that a prisoner has wilfully violated a term or condition of the community supervision program, the court may impose any other terms or conditions considered appropriate and may continue the prisoner on community supervision, or the court may revoke the prisoner's community supervision and impose a sentence of up to one year for violation of the community supervision program. A prisoner who is incarcerated for revocation of the community supervision program is not eligible to earn any type of credits which would reduce the sentence for violation of the community supervision program.

(D)     If a prisoner's community supervision is revoked by the court and the court imposes a period of incarceration for the revocation, the prisoner also must complete a community supervision program of up to two years as determined by the department pursuant to subsection (B) when he is released from incarceration.

>A prisoner who is sentenced for successive revocations of the community supervision program may be required to serve terms of incarceration for successive revocations, as provided in Section 24-21-560(C), and may be required to serve additional periods of community supervision for successive revocations, as provided in Section 24-21-560(D). The maximum aggregate amount of time the prisoner may be required to serve when sentenced for successive revocations may not exceed an amount of time equal to the length of incarceration imposed for the original "no parole offense." The original term of incarceration does not include any portion of a suspended sentence.

>If a prisoner's community supervision is revoked due to a conviction for another offense, the prisoner must complete a community supervision program of up to two continuous years as determined by the department after the prisoner has completed the service of the sentence for the community supervision revocation and any other term of imprisonment which may have

>been imposed for the criminal offense, except when the subsequent sentence is death or life imprisonment.

Based on the South Carolina statutes, petitioner pleaded guilty to a no parole offense and the mandatory CSP was a part of petitioner's sentence. Therefore, these claims as to cruel and unusual punishment and false imprisonment are without merit. The petitioner violated the terms of the CSP on several occasions and pursuant to statute his CSP was revoked. Therefore, petitioner was detained by lawful authority. Thus, petitioner has failed to state facts sufficient to support a claim that requiring his participation in the CSP constitutes cruel and unusual punishment or false imprisonment.

Further, petitioner states that the Department's CSP violates the ex post facto clause. However, this argument is without merit in that the statute in question was passed in 1996, five years before petitioner committed the crime whose sentence includes mandatory participation in the CSP. The United States Supreme Court in Collins v. Youngblood 497 U.S. 37, 110 S.Ct. 2715 (1990), held that the definition of an *Ex Post Facto* law as one that: punishes as crime an act previously committed, which was innocent when done; makes more burdensome the punishment for crime after its commission; or deprives one charged with a crime of any defense available under law in effect when act was committed. Id. at 37. Therefore, respondent's motion for summary judgment should be granted on this ground.

## VI. PETITIONER'S MOTION TO INVADE A WRIT OF MANDAMUS

On December 21, 2006, petitioner filed a motion entitled "Motion to invade a Writ of Mandamus in Protecting and Enforcing the ex-post facto law in the case."  (Document # 17).

Respondent filed a response on January 4, 2007. A review of this motion reveals petitioner asserts that the CSP violates the ex post facto clause of the United States Constitution claiming it is part of a statute enacted in 2005 and is being applied retroactively to his detriment. Petitioner seeks to have the court declare the statute unconstitutional and to have him released from custody.

In order for a law to be prohibited by the ex post facto clause, two elements must be present: (1) The law must be retrospective so as to apply to events occurring before its enactment; and (2) the law must disadvantage the offender affected by it. Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446 (1987). As discussed above, the South Carolina's "no parole offense" classification system went into effect on January 1, 1996. (S.C. Code Ann. §24-13-100 to -175). As part of the same legislation, S.C. Code § 24-21-560 created the CSP to be operated by the Department of Probation, Parole, and Pardon Services. Petitioner was convicted of Felony DUI causing death which was classified as a "B-felony" which was a "no parole offense" on the date it was committed and the mandatory CSP was a part of the sentence. Thus, the statute was not restrospective. It is not clear why petitioner believes the statute was not enacted until 2005. Therefore, it is recommended that petitioner's motion to Invade a Writ of Mandamus (document #17). be dismissed.

## VII. CONCLUSION

As set out above, a review of the record indicates that the petition should be dismissed and respondents' motion for summary judgment (document #6) should be granted. It is, therefore,

RECOMMENDED that petitioner's petition for writ of habeas corpus be dismissed and respondent's motion for summary judgment granted.

It is FURTHER RECOMMENDED that petitioner's Motion to Invade a Writ of Mandamus

(document # 17) be denied.

                                                  Respectfully submitted,

                                                  s/Thomas E. Rogers, III
                                                  Thomas E. Rogers, III
                                                  United States Magistrate Judge

February 15, 2007
Florence, South Carolina

    **The parties' attention is directed to the important information on the attached notice.**

14